UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KRISTY SCHWADE,

    Plaintiff,

v.                                                      CASE NO. 8:10-cv-2436-T-23MAP

TOTAL PLASTICS, INC.,

    Defendant.

_____/

**ORDER**

Kristy Schwade sued her former employer, Total Plastics, Inc., for benefits under an ERISA plan. After winning a summary judgment and defeating a motion to reconsider, Total Plastics moves for attorney's fees from Schwade under 29 U.S.C. § 1132(g)(1) and from Schwade's counsel under 28 U.S.C. § 1927. (More precisely, Total Plastics moved (Doc. 35) for fees, Schwade responded (Doc. 46), an order denied Schwade's motion for reconsideration, and Total Plastics supplemented (Doc. 51) the motion for fees. Schwade never responded to the supplement.)

Total Plastics maintains a self-funded ERISA employee health benefit plan ("the Plan"). The Plan may withhold (and ultimately deny) benefits if a plan participant refuses to sign an agreement acknowledging the Plan's comprehensive

("from the first dollar") subrogation right.  In 2007 Schwade failed to sign a subrogation agreement and the Plan stopped paying the medical benefit claims of Schwade's injured son, K.S.  Schwade failed to appeal each claim denial, and the time to appeal expired.  Months later, in 2008, the Plan appeared willing to consider reversing some claim denials if Schwade belatedly agreed to subrogation, but the Plan confirmed the denial of each claim because of the missing agreement.  Through her attorney, Schwade rejected subrogation and asked instead to receive full benefits under altered terms.  Schwade's attorney proposed that he receive payment in full from a potential tort award for K.S.'s injury, that Schwade receive half of the award remaining after the attorney's fee, and that Schwade re-pay the Plan (to the extent possible) from the residuum.  Although the Plan had stated that no benefit would issue without a signed subrogation agreement, Schwade's attorney continued to raise the offer periodically for nearly eighteen months.  No appeal occurred.  In late 2010, nearly a year after the last letter from Schwade's attorney to the Plan, Schwade sued Total Plastics under Section 502(a)(1) of ERISA "to recover benefits due [] under the terms of [the] plan."  (Doc. 3 at 5, 13)

Schwade received notice several times, both in 2007 and in 2008, that the Plan had denied claims.  She never appealed a claim denial.  The time to appeal expired years before this action began.  Further, both the Plan's terms and Eleventh Circuit law entitled the Plan to subrogation.  Through counsel, Schwade repeatedly rejected subrogation and demanded benefits without subrogation.  Because Schwade

disregarded her administrative remedy and violated the Plan's subrogation requirement, her action suffered dismissal.  Although Total Plastics faults Schwade for failing to sign the subrogation agreement, the motion for attorney's fees mainly discusses Schwade's counsel.  According to Total Plastics, Schwade's counsel deserves blame for failing to understand the futility of seeking a release from subrogation, for ignoring the Plan's required administrative remedy, for beginning a baseless action, and for continuing to litigate after Total Plastics explained the action's baselessness.  Total Plastics pursues attorney's fees for the entire action, which Total Plastics says "was frivolous from its inception."

Title 29 U.S.C. Section 1132(g)(1) allows a discretionary award of attorney's fees to either party in an ERISA action (although the party must achieve "some degree of success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 130 S.Ct. 2149 (2010)).  Whether to award attorney's fees depends primarily on (1) the culpability or bad faith of the non-movant, (2) the non-movant's ability to pay the award, (3) the probability that an award will deter wrongful behavior similar to the non-movant's, (4) the degree to which the movant sought either to benefit each plan beneficiary or to resolve a "significant legal question" involving ERISA, and (5) the comparative merits of each party's case.  *Byars v. Coca-Cola Co.*, 517 F.3d 1256, 1268-69 (11th Cir. 2008); *Wright v. Hanna Steel Corp.*, 270 F.3d 1336, 1344-45 (11th Cir. 2001); *see also Hardt*, 130 S.Ct. at 2158.

First, Total Plastics never alleges bad faith by Schwade, who, the record shows, displayed only the pristine motive of wanting to care for K.S. as best she could. Total Plastics argues that Schwade bears culpability for the breaches of the Plan and for the deficient action that followed, but the record suggests otherwise. When asked at her deposition whether she recalled receiving explanations of benefits listing charges not paid by the Plan, Schwade responded, "By that point I had sought counsel and I was doing what he told me to do."[*] (Doc. 20, Ex. 2, dep. pp. 49:24-50:4); *cf. Loving v. Pirelli Cable Corp.*, 11 F.Supp.2d 480, 496 (D. Del. 1998). Second, Schwade remains burdened by K.S.'s medical bills – she has no money to spare. (Doc. 46, Ex. 2) Third, Total Plastics raised no "significant legal question." In a sense Total Plastics "sought" to benefit the other beneficiaries by preserving the Plan's assets. Under Section 1132(g)(1), however, "seeking" to benefit other beneficiaries typically involves suing the plan. *See Marquardt v. N. Am. Car Corp.*, 652 F.2d 715, 721 (7th

---

[*] Another exchange during Schwade's deposition proceeded as follows:

Q. Okay, if I tell you that the last day of your employment was August 10, 2007, would you have any reason to disagree with me?

A. Maybe. I have a little bit of trust issues.

. . . .

Q. Because you just met me, you don't trust me?

A. Well, I have trust issues just from what happened to my child and bad experiences with other attorneys.

Q. Okay. But not [your counsel], of course, right?

A. No. He's my attorney, so it's different.

(Doc. 20, Ex. 2, dep. p. 18:5-16)

Cir. 1981). These three factors – especially Schwade's innocence – defeat the other two. The motion for fees from Schwade fails.

Under 28 U.S.C. § 1927, "any attorney . . . who so multiplies proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess . . . attorneys' fees reasonably incurred because of such conduct." Only reckless or bad-faith conduct qualifies as "unreasonable and vexatious." *Hudson v. Int'l Computer Negotiations, Inc.*, 499 F.3d 1252, 1262 (11th Cir. 2007). A meritless action will not necessarily attract a sanction. 499 F.3d at 1262. Also, penalizing the multiplication of "proceedings in [a] case," Section 1927 governs an attorney's conduct only after an action begins. *See Bender v. Freed*, 436 F.3d 747 (7th Cir. 2006); *see also Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010); *Zuk v. E. Penn. Psy. Inst.*, 103 F.3d 294, 297 (3d Cir. 1996). "The statute provides a discretionary sanction against attorneys who abuse the judicial process, not those who engage in improper conduct in the runup to litigation." *Bender*, 436 F.3d at 751.

When critiquing Schwade's counsel, Total Plastics emphasizes acts that occurred before this action started. Section 1927 ignores that conduct. Even if an attorney's misconduct causes the action to arise, Section 1927 penalizes only a wrongful multiplication of proceedings after the action begins. *Cf. Peer*, 606 F.3d at 1314. Whether this action was avoidable is therefore not pertinent. Total Plastics contends, however, that Schwade's counsel needed to quit litigating after Total Plastics "tried to educate [him] on the law." In particular, several months before

moving for summary judgment Total Plastics sent Schwade's counsel a letter that lists and summarizes several authorities supporting an ERISA plan's broad subrogation right. (Doc. 35, Ex. 5)

Schwade never presented a persuasive answer to the letter. A response at the time says, "Without [] a recovery [from a third party], we fail to see how Schwade[] ha[s] breached the Plan." (Doc. 46, Ex. 1 at 4) This statement ignores an obviously breached Plan term requiring Schwade "to execute documents . . . to protect the Plan's [subrogation] rights." Schwade also objected to the supposed unfairness of the Plan's subrogation right, but she failed to address the governing law protecting both a plan's terms and a plan's subrogation right. *See Zurich Am. Ins. Co. v. O'Hara*, 604 F.3d 1232, 1236-38 (11th Cir. 2010); *Cagle v. Bruner*, 112 F.3d 1510, 1520 (11th Cir. 1997); *Hunt v. Hawthorne Assocs., Inc.*, 119 F.3d 888, 911 (11th Cir. 1997). More recently, the response to the motion for attorney's fees states, "in virtually every case [in the letter] the beneficiary made a recovery that [he] attempted to protect from the plan's subrogation rights. No such scenario occurred in this case." (Doc. 46 at 5) Schwade abandoned this attempt to distinguish the cases in the letter when she moved to alter the summary judgment based on *US Airways, Inc. v. McCutchen*, 663 F.3d 671 (3d Cir. 2011), in which, to repeat Schwade's words, "the beneficiary made a recovery that [he] attempted to protect from the plan's subrogation rights." In addition, other than the incorrect claim that no breach of the Plan can occur until

- 6 -

after a recovery from a third party, Schwade provides no reason why the distinction she identifies matters. *See also* (Doc. 31 at 13)

On the other hand, Total Plastics's letter discusses no published Eleventh Circuit authority. (The letter mentions *O'Hara* in passing.) The letter addresses an important issue, the validity of the Plan's requesting a subrogation agreement, but only a far more thorough paper should force an attorney to either end an action or risk a sanction. Total Plastics argues in the alternative that at least the motion for reconsideration unreasonably enlarged the proceedings. Although the motion for reconsideration raises mostly waived arguments and only weak arguments, a sanction under Section 1927 requires "more than a lack of merit." *Hudson*, 499 F.3d at 1262. Total Plastics fails to show that submitting the motion constituted recklessness or bad faith.

An additional consideration impedes a fee award. ERISA is supposed to provide "a predictable set of liabilities" governed by "uniform standards." *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 379 (2002). Often, regrettably, the statute, the regulation, and the judicial authority constituting ERISA law instead display unwanted and unneeded complexity and contradiction. *Cf. Gilley v. Monsanto Co., Inc.*, 490 F.3d 848, 852 (11th Cir. 2007) (Carnes, J.) ("Throughout his judicial career [Justice] Holmes relished challenging cases . . . . It is a pity that Holmes did not live to see ERISA cases."). Even if this action began because of a failure to obey simple rules, once this action began and met a few of ERISA's latent difficulties

(*e.g.*, an obscure commentary that interprets a regulation to overrule precedent that adds to the statute that conflicts with the commentary), no reckless or bad-faith litigation occurred.

The motion (Docs. 35, 51) is **DENIED**.

ORDERED in Tampa, Florida, on May 25, 2012.

*Steven D. Merryday*
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE